50   149
f 63   299
63   316

50   149
81   535

O. M. RICE V. THE BOARD OF CANVASSERS OF COFFEY COUNTY *et al.*

MANDAMUS—*Writ, When Refused*—*Recanvassing Votes*—*Delay in Application*—*Discretion of Court.* Where a candidate for representative in the state legislature brings an action of *mandamus* to compel the board of canvassers of a county to reconvene and recanvass the returns from a certain township, and to make a corrected abstract crediting him with 96 votes, one more than was given to him by the first canvass, and it appears by the certificate in the poll books, made by the judges and clerks of election, that he received 96 votes in that township; but it also appears from the enumeration of votes on the tally sheets, which were included in the poll books, that he received only 95 votes, which is corroborated by the duplicate poll book retained in the township, and it appears by these and other evidence that he actually received but 95 votes in that township; and where it further appears that no complaint was made by him of the canvass until more than three weeks after the state board of canvassers had finally adjourned, and that the writ, if issued, would be fruitless and unavailing, the court in its discretion will refuse the same.

*Original Proceeding in Mandamus.*

ACTION by *O. M. Rice* against the *Board of Canvassers of Coffey County* and others, to compel defendants to recanvass the returns for member of the legislature, and send a corrected abstract of the votes cast for representative in Coffey county. Writ refused. The facts are stated in the opinion, filed January 7, 1893.

*W. C. Webb, G. C. Clemens,* and *Frank Doster,* for plaintiff.

*T. F. Garver, S. R. Peters, Chester I. Long,* and *F. B. Dawes,* for defendants.

The opinion of the court was delivered by

JOHNSTON, J.: This is a proceeding in *mandamus* brought originally in this court by O. M. Rice against the board of canvassers and the county clerk of Coffey county. He asks for a writ compelling them to reconvene and recanvass the returns of the township of Avon, Coffey county, for member of

the legislature; to correct an alleged error in the first canvass; and to certify and send to the secretary of state a corrected abstract of the votes cast for representative in Coffey county. The case was tried on an application for a peremptory writ, after notice had been given to the defendants.

It appears that O. M. Rice and T. C. Ballinger were candidates for representative from Coffey county at the late election, and that when the county canvassing board met and canvassed the result of that election, they found and declared that each had received 1,826 votes, and a certified abstract of that result was sent to the secretary of state. Since that time the state board of canvassers canvassed the returns from that county and found that there was a tie, and, having settled it as the statute prescribed, awarded the certificate to Ballinger. The plaintiff alleges that the canvassing board of the county refused to canvass all the votes returned for him in Avon township; that by the certified returns from that township he received 96 votes, and Ballinger received 68 votes; but that the board determined and declared that Rice received only 95 votes. He avers that if all had been counted it would have appeared that he had a total of 1,827 votes, one more than Ballinger, and that, as a true and correct abstract of the votes had not been sent to the secretary of state, the state board of canvassers could not declare him to be elected nor award him the certificate to which he was entitled. The poll books of Avon township were presented to the court, and from them it appears that the footings and statement made in the certificate of the judges and clerks of election show that Rice received 96 votes in that township; but it also appears by the enumeration or tallies entered on the tally sheet of the poll books, as the ballots were counted by the judges, that he received only 95 votes. When the canvassers met they decided that they would consider the enumeration of the votes upon the tally sheet, in determining who was elected to the various offices; and this was in accordance with a practice which had long prevailed in that county. What is called the "tally sheet," is bound in and as a part of the poll book. On

the left-hand side of the sheet are printed the names of the officers voted for. To the right of the list of candidates the sheet is ruled in squares large enough to contain five marks, or tallies. The clerks entered a mark or tally opposite the name of each candidate for each vote read and counted for him by the judges. On the same sheet is a certificate made by the judges and clerks, in which the total number of votes understood to be received by each candidate was written; and all included in a cover, marked "poll book."

A meager description of the poll books and forms provided for tallying the ballots as they are taken from the ballot box and read is sufficient. Substantially the same form of poll books and tally sheets has been in use for many years, if not from the organization of the state, and almost every elector is familiar with them. To the right of the name of Rice, votes were entered in 20 columns or spaces. In each of 18 of them, there were five tally marks entered, by making four straight marks, and then by drawing a diagonal one across them. In one space, not far from the middle of the line of spaces, there were only four marks, with no line across them; and in the twentieth space there was but one mark. It appears that the judges and clerks assumed that there were five tallies in each space, except in the twentieth, and so, without otherwise counting them, they decided that 19 spaces contained 95 votes; and these added to the one in the twentieth space made up the 96 votes, and they made their footing and certificate accordingly. As a matter of fact, only 95 tallies were entered on the tally sheet, and it was from the tally sheet alone that the judges and clerks determined the total number of votes that were cast, and in the manner described. One of the poll books, including this tally sheet on which they made their certificate and return, was sent by them to the county clerk's office, and the duplicate was retained by the township trustee. We have examined both of them, and find that they correspond exactly in the record of Rice's vote. With this return before it, the county board determined that Rice received but 95 votes, and made its canvass accordingly. From

the poll books and the evidence submitted to us, it appears reasonably certain that only 95 votes were cast for Rice in Avon township. No objection against the count was made by him at the time, nor when the canvass was made by the state board, weeks afterward; nor was there any protest from him until the commencement of this proceeding, long after the final adjournment of the state board of canvassers.

It is urged that the tally marks constitute no part of the return, and cannot be used in determining the number of votes. Of course the board must make its determination from the legal returns made by the judges and clerks, and cannot exercise the function of a contest court. It is argued, however, in behalf of the defendants, that the statute contemplates there shall be just such an enumeration or tallying of the votes as the count proceeds as was made in this instance. (Gen. Stat. of 1889, ¶¶ 2679, 2680, 2684, 2687.) It is also contended that such tally sheets have been made and returned as a part of the poll books from the earliest history of the state; and it is further said that the tally sheets have been recognized in several decisions of the supreme court, and this method of making the poll books and tallying the votes has been in universal use for so many years, and been recognized by all the departments of the state government, as to constitute a practical construction of the statute — a construction which has generally been accepted and acted on by the people of the state. There is some diversity of judicial opinion in regard to whether the tally or enumeration of the votes entered in the poll book may be considered as a part of the return. In Missouri, which has a statute similar to our own, it is held that it cannot be used to verify or correct the figures or footings contained in the certificate. (*The State v. Trigg,* 72 Mo. 365.) *The State v. State Canvassers,* 36 Wis. 498, is cited as sustaining the same view. The preponderance of decisions under statutes somewhat similar to ours, however, appears to uphold the view that the tally or enumeration of the votes in the poll books may be considered in verifying the returns, and that if a disparity exists between the footings and the tallies the latter

should control. (*Dalton v. The State*, 43 Ohio St. 652; *The State v. Hill*, 20 Neb. 119; *The People v. Ruyle*, 91 Ill. 525; *Simon v. Durham*, 10 Ore. 52; *The State v. Cavers*, 22 Iowa, 343; *Trueheart v. Addicks*, 2 Tex. 221.)  The writer of this opinion is inclined to think that the entries or tallies made by the clerks in the poll books as the count proceeds constitute a part of the return which may be considered by the county canvassing board in determining the result.   The court, however, will not decide that question at this time, but will rest its decision upon other grounds.

The plaintiff seeks relief through an action of *mandamus*, which, as has been generally decided, lies, to a great extent, in the discretion of the court.   It should be allowed only to secure or protect a clear legal right, and should never be granted when its enforcement would work an injustice or accomplish a wrong. (*The State v. Marston*, 6 Kas. 524; *Peters v. Board of State Canvassers*, 17 id. 365; *The State v. Stevens*, 23 id. 456; *People v. Board of Canvassers*, 129 N. Y. 370; High, Ex. Rem., § 40; 14 Am. & Eng. Encyc. of Law, 97.)   Has the plaintiff shown a clear legal right to be credited with 96 votes from Avon township?   Would any contesting tribunal, from the evidence submitted, give him more than 95 votes? The enumeration entered in the poll books and the one on which the judges and clerks relied to make out their certificate, and which they set up as a part of their return, plainly shows that he received only 95 votes.   This return was verified and corroborated by the duplicate return retained in the township.   An abstract or return by the county canvassing board, showing that Rice had received 96 votes in that township, and 1,827 in the county—a plurality of one over his opponent—would apparently be an untruth, and to compel the canvassers to declare such a result, and assist him in obtaining a certificate or office to which he was not elected would be a wrong and an injustice.   Further, it appears that a vote was cast for "Barringer," and that it was not counted for Ballinger.   The similarity of the sound and form of the two names would indicate that it was intended for Ballinger.

(*Clark v. Comm'rs of Montgomery Co.*, 33 Kas. 202; *Behrensmeyer v. Kreitz*, 26 N. E. Rep. [Ill. Sup. Ct.] 704; *The State v. Foster*, 38 Ohio St. 599; *Newton v. Newell*, 6 N. W. Rep. 10; Cooley, Const. Lim. 769.) If that had been done, Ballinger would have had a plurality of one vote, and would have been entitled to the certificate.

There is another sufficient reason why the writ should not go. It is a fundamental rule of law that it will never be granted where, if issued, it would prove fruitless and unavailing. (*Shellabarger v. Comm'rs of Jackson Co.*, ante, p. 138; High, Ex. Rem., § 14; *People v. Board of Canvassers*, 129 N. Y. 370; 14 Am. & Eng. Encyc. of Law, 104.) Another canvass and abstract would be obviously useless. Rice alleges that by the refusal of the board he has been deprived of his right to receive from the secretary of state a certificate showing that he was elected representative from Coffey county, and this alleged right he now seeks to enforce. A certificate, if he is entitled to it, would serve no useful purpose at this time. He made no complaint and took no steps to correct the alleged error until more than three weeks after the state board of canvassers had finally adjourned. That board when in session canvassed the returns from Coffey county, which were executed by the proper officers in regular form, and were genuine and have been duly transmitted to the secretary of state. It has just been decided in *Rosenthal v. Board of Canvassers*, ante, p. 129, that after the board of canvassers has canvassed all the returns, declared the result, completed its labors as the statute prescribes, and adjourns without day, it is *functus officio*, and cannot voluntarily, or by compulsion, reassemble, or make any other or different canvass than has been made. No certificate can now be obtained by Rice, and if he has been wronged by the action of the county canvassing board, it can only be corrected by the house of representatives.

It was suggested in argument that he was entitled to have a recanvass made in order to furnish evidence of the true result for use in the contesting tribunal. It is wholly unneces-

sary, however, to invoke the mandate of this court for that purpose. The legislature itself is vested with full power to obtain all the testimony which could be compelled by this court; and it is fundamental that *mandamus* will not be employed where there is another adequate and suitable remedy.

Our conclusion is that the plaintiff has failed to establish his right to the writ, and it must therefore be refused.

All the Justices concurring.