[Civ. No. 1041.   Third Appellate District.—December 3, 1912.]

FRANK R. DEVLIN, Petitioner, v. J. H. DONNELLY and Other Members of the Board of Supervisors of Sacramento County et al., Respondents.

PRESIDENTIAL ELECTION—CANVASS OF RETURNS AS TO ELECTORS COMPLETED—RETURNS CERTIFIED TO SECRETARY OF STATE—MANDAMUS AS TO TALLY-LISTS DISALLOWED.—Where the canvass of the returns at a presidential election as to electors has been completed by the board of supervisors sitting as a board of canvassers, and their returns have been certified to the secretary of state, and no fraud or mistake is shown as to their action, *mandamus* will not lie, in such case, to compel the canvassers again to meet and canvass the returns in accordance with the tally-sheets, as distinguished from the aggregate shown by the certified returns.

ID.—CONFLICTING OPINIONS OF APPELLATE COURTS AS TO CONTROL OF TALLY-LISTS IN CANVASS—QUESTION NOT HERE INVOLVED.—Though the opinions of two appellate courts conflict as to whether the tally-lists shall control in making a canvass of the election returns, yet whatever may be the outcome of such conflicting opinions, the question is not necessary to be considered in determining the matter here involved.

ID.—RULES AS TO MANDAMUS.—*Mandamus* will not issue for a "vain and nugatory purpose," or on mere technical grounds. Its design is to do substantial justice and prevent substantial injury. It lies to a great extent in the discretion of the court. It should be allowed only to protect a clear legal right, and should never be granted where its enforcement would work an injustice or accomplish a wrong. Where the right is not clear nor the duty of the court imperative, the consequences to flow from granting the writ should be considered.

APPLICATION for Writ of Mandamus to the Board of Supervisors of Sacramento County.

The facts are stated in the opinion of the court.

Charles O. Busick, and Clinton L. White, for Petitioner.

Hugh B. Bradford, and J. O. Brown, for Respondents.

CHIPMAN, P. J.—At the election held on November 5, 1912, plaintiff was one of the candidates of the Progressive Party for the office of presidential elector. He seeks by the writ of *mandamus* to have the vote canvassed in certain election precincts in Sacramento County. Among other grounds for issuing the writ it is alleged that the canvass of election precincts for presidential electors "has proceeded sufficiently to show that there is a small margin as between the Republican Party and Progressive Party candidates on the one part and the Democratic candidates for electors on the other part, and the result of the election in Sacramento County for presidential electors if lawful and regular canvass will be controlling and decisive as to the result throughout the state as to which set of electors has been duly elected."

Without setting forth the averments of the petition, we understand from the facts admitted at the argument on the demurrer, that the election officers did not mark on the tally-sheets opposite each candidate's name a tally for each vote as called, except that they did so mark the tally-sheets opposite the name of the candidate at the head of each group of candidates. In the other cases the election officers entered the total number of votes cast for each candidate but did not keep a tally of each vote, as is required to be done by section 1258 of the Political Code. The contention is that where the tally-sheets fail to show any tallies or did not show a number of tallies corresponding with the number carried out as the total number of votes counted for the candidates, the board violated its duty in canvassing the vote in accordance with the total number so given in the certified returns.

The result of the canvass of the returns thus made up was declared by the board of supervisors and entered on the records of such board. The clerk of the board, under section

1308 of the Political Code, made certified abstract of so much of the record as relates to the vote given for persons for electors for president and vice-president of the United States. Pursuant to section 1309 of the same code, the clerk proceeded to ''seal up such abstract, indorse it 'Presidential Election Returns,' and without delay transmit it to the secretary of state by mail or in the manner hereinafter prescribed.''

It is admitted, for the purpose of the hearing on the demurrer, that the required certificate is now in the hands of the secretary of state and that he has not yet certified the returns or the result of said election, to the governor.

We are asked by the writ of mandate to compel the board of supervisors to proceed to canvass the returns in accordance with the tally-sheets and that said board be directed not ''to canvass any votes except as the same are shown by the tally-marks on the tally-sheets opposite the name of such candidate without regard to what may be shown by the certificate declaring the aggregate number of votes received by such candidate,'' and that ''where the returns show no tally-marks whatever upon the tally-sheets opposite the name of the candidate,'' the said board ''be directed to canvass the returns the same as if such candidates are entitled to no votes whatsoever'' from such precincts as are involved.

There is no averment in the petition that there was fraud or mistake in the result certified, nor is it shown that the certificate of the result entered upon the records of the board does not state the correct number of votes cast for and against each candidate. The contention is that it was the duty of the election officers to ''keep the number of votes by tallies, as they are read aloud,'' as provided by section 1258, and in every instance where the election officers failed to follow this plain mandate of the statute, the aggregate votes certified by such officers should be wholly disregarded by the board of supervisors and that such ''candidates are entitled to no votes whatsoever.''

There are many and cogent reasons for holding that the election officers should strictly follow the directions given in section 1258; and, in an action where a recount is sought under the provisions of the statute, the court may go behind the returns, examine the ballots and correct the tally-sheets so as to make them speak the truth. But the board of supervisors

20 Cal. App.—32

have no such power in canvassing the returns. They have before them the lists attached to the tally-lists, "containing the names of persons voted for and for what office, and the number of votes given for each candidate and such lists must be signed by the members of the election board and attested by the clerks." (Pol. Code, sec. 1260.) The board of supervisors in canvassing the returns have only the ministerial duty to perform as directed by sections 1280 and 1281 and to cause the clerk to enter upon their records a statement of the vote thus canvassed as provided in section 1282. In the present case the board of supervisors had before it the certified returns of the vote for presidential electors which showed that petitioner and certain other candidates had received a certain number of votes in the precincts designated but the tally-sheets did not show tallies corresponding in number with the certified aggregate vote, in some cases there being no tallies whatever. The board, in making its statement on its records, accepted these totals as correctly showing the votes cast for candidates and the clerk made a certified abstract accordingly and transmitted it to the secretary of state as required by section 1309. The question here is not whether the election officers performed their duties as required by law, nor is it whether, by the writ of mandate, the board of supervisors can be directed to correct the election returns, but the question is— should the writ be used to compel the board of supervisors to make the canvass so that "where the returns show no tally-marks whatever upon the tally-sheets opposite the name of the candidate, the said board be directed to canvass the returns the same as if such candidates are entitled to no votes whatever."

In the case recently decided by the district court of appeal for the second district, entitled—*People on the relation of Del Valle and Foy* v. *Butler and others, members of the board of supervisors of Los Angeles County, ante,* p. 379, [129 Pac. 600], the writ was asked to compel the defendants, then convened to so canvass the returns of the election for presidential electors, (as we assume from what appears in the opinion of the court) that they shall be guided exclusively by the tallies as shown on the tally-sheets and where there is a conflict between such tallies and the aggregate vote as certified on the election returns the tally-sheets must govern. In that case

the board of supervisors were engaged in canvassing the returns and the court held that the writ would lie to compel the board, in making the canvass, to follow the tally-sheets. We express no opinion upon the question whether the writ will lie where, on proper showing, it is seasonably sought to direct the board in the performance of its duty. Such is not the case here. The board of supervisors has completed its canvass and the result has been duly certified to the secretary of state. In the Los Angeles case the court followed the decision in *Rice* v. *Board of Canvassers of Coffey County,* 50 Kan. 149, [32 Pac. 134], and other cases cited, in which it was held "that the tally or enumeration of the votes in the poll-books may be considered in verifying the returns, and that if a disparity exists between the footing and the tallies the latter should control." In *People ex rel. Sill* v. *Murphy et al.,* supervisors of Alameda County, *ante,* p. 398, [129 Pac. 603], recently before the district court of appeal for the first district, that court considered the question. Of the Los Angeles decision it is said: "We cannot determine from the opinion what the petition disclosed as to the condition of the returns that were considered in that case. We are not called upon, therefore, to discuss that case, or consider it as an authority here." Speaking of that case and the absence of a statement of what the full returns might show, the court said: "Cases may occur where, upon a full return being before the court, it may justly direct the canvassing board upon such points." In the Alameda County case, as we infer from the opinion, the board of supervisors had completed the canvass of the precinct involved when the writ was asked but the votes for the entire county had not been canvassed or a certified abstract sent to the secretary of state. Much the same facts as to the method adopted by the board in making the canvass existed as in the Los Angeles County case. Upon the question whether the board should, in making its canvass, be controlled by the tally-sheets, the two decisions are not in harmony. The court, in the Alameda County case, cited *State* v. *McFadden,* 46 Neb. 669, [65 N. W. 801], where there was a discrepancy between the tally-list and the certificate and the court said: "While generally such boards have no discretion in the discharge of their duties, the rule has its exceptions. . . . Where there is a discrepancy between the certificate of votes cast for any

person for a particular office and the tallies of the votes for him, the canvassers must determine from the entire returns which is correct. . . . The canvassers, after comparing the certificate and tally-list returned, must decide which is correct, and make an abstract of the vote accordingly. No arbitrary rule can be laid down. Upon such comparison the canvassers may be justified in counting the votes as shown by the tally-list, rather than the number stated in the certificate, and *vice versa.*'' This was deemed by the judges in the Alameda County case to be ''as complete a statement of the correct rule as can be found in any decision of any court of last resort.'' The rule similarly stated in 15 Cyc. 382, also met the approval of that court. This conflict of opinion becomes of importance in cases like the present one where the statute makes no provision for a recount. It is of less consequence in cases where the ballots may be resorted to by a disappointed candidate.

Whatever, then, may be the true rule ultimately to be established in this state, there still remains the question whether we should allow the writ of *mandamus* to be resorted to under the circumstances of the present case. We said, in *Neto* v. *Conselho Amor da Sociadade,* 18 Cal. App. 234, [122 Pac. 973], that the writ of mandate should not issue ''for a vain and nugatory purpose.'' ''It is not issued on mere technical grounds. Its design is to do substantial justice and prevent substantial injury,'' citing cases. From *Rice* v. *Board of Canvassers of Coffey County,* 50 Kan. 149, [32 Pac. 134], cited in both the Los Angeles County and Alameda County cases, recently decided by the district courts of appeal, the court, in the Alameda County case, quoted as follows: ''The plaintiff seeks relief through an action of *mandamus,* which lies to a great extent in the discretion of the court. It should be allowed only to secure or protect a clear legal right, and should never be granted where its enforcement would work an injustice or accomplish a wrong,'' citing cases. We have here a case where the canvassers were confronted with the certificate of the election officers showing that certain presidential electors had received a stated number of votes. They also had before them the tally-sheets which did not show tallies in corresponding numbers. The canvassers could readily discover from the tallies given the leading candidate among the electors,

that they must either accept the certificate as to the total number of votes counted for the candidates, or do an apparent injustice to one or more of them. No suspicion of any incorrectness in the count thus certified was discoverable from the face of the returns and no incorrectness is now alleged. To grant the writ with the directions prayed for would, after much delay, result in a certified abstract to the secretary of state different from that now in his hands; and, in all probability, it would be a certificate disfranchising all voters whose votes happened not to be shown in the tallies, and would bring about a result in direct contravention of a certified result the correctness of which is not questioned and cannot be, in this action, otherwise than by an arbitrary pronouncement that the tally-sheets alone shall govern. Then, too, which certified abstract would the secretary of state follow? He is not a party to the action. Should he refuse to be guided by the second certified abstract it would be necessary to resort again to the writ. We are not willing, under the circumstances, to issue the writ where the inevitable consequences would work what we conceive would be an injustice; especially so where neither the good faith of the canvassers nor the correctness of their work is challenged. It may not be amiss to suggest what may easily be seen might happen should petitioner be granted the writ. Our judgment does not become final for thirty days and the unsuccessful party has twenty days thereafter in which to apply for a rehearing in the supreme court, which application would be granted or refused ten days later. What delay would follow if granted cannot be determined. Furthermore, other actions may be brought to bring about like results in other counties and by this means the final returns to the governor may be postponed to a date beyond the assembling of the electors on the "second Monday in January next following their election," as required by section 1315 of the Political Code. Indeed, it would be quite within the ingenuity of interested parties to hold back the final returns to a date beyond the meeting of the electoral college at Washington to declare the result of the election for president and vice-president.

It is true that where there is a clear legal right the courts will not ordinarily refuse to enforce it in disregard of possible consequences. But where the right is not clear and the duty

of the court imperative, the consequences to flow from granting the remedy may be considered. And this is especially true in determining whether the extraordinary writ of *mandamus* should issue. We do not think the right here claimed is by any means so clear as to deprive the court of its discretion in determining whether the writ should issue.

We feel justified in refusing the writ for the further reason that plaintiff may, if so minded, apply at once to the supreme court for relief, the only tribunal of the state with power to finally determine the true rule in this very important matter and to clear away the apparent conflict of decision in the district courts of appeal.

The demurrer is sustained and the writ denied.

Burnett, J., and Hart, J., concurred.