[Civ. No. 12196. First Dist., Div. Two. Feb. 26, 1943.]

DONALD H. WILKINSON, Petitioner, v. BOARD OF, SUPERVISORS OF THE COUNTY OF ALAMEDA, Respondent.

R. W. Henderson, Ernest Leslie, L. B. Schlingheyde, Ernest Crowley and Eben Whittelsey for Petitioner.

Ralph E. Hoyt, District Attorney, J. Frank Coakley, Chief Assistant District Attorney, R. Robert Hunter, Assistant District Attorney, and Stanley C. Smallwood, Deputy District Attorney for Respondent.

DOOLING, J. pro tem.—This is an original proceeding in mandamus by which petitioner seeks to compel respondents to pay petitioner certain amounts as aid to a blind person under chapter I, part I, division V, Welfare and Institutions Code.

Petitioner became blind in an industrial accident in Utah in 1934 and is in receipt of the sum of $54.10 per month as compensation for that injury. He is a lawyer licensed to

practice in California and maintains an office for the practice of his profession. He has been a resident of California for more than five years but less than ten. The basis upon which he claims the right to payments as aid to the needy blind is that after deducting his office expenses from the sum of his compensation of $54.10 per month and the fees received from his practice his net income amounts to less than $50 per month. In other words if he closed his office he would have a net income of $54.10 per month but by keeping it open he needs assistance to bring his total net income up to $50 per month.

Before July 1, 1941, petitioner had been receiving payments as a needy blind person and on that date respondent terminated such payments. Petitioner appealed the order of termination to the State Social Welfare Board. That board first ordered the payments continued but later granted a rehearing and made an order denying petitioner any relief. Petitioner urges that the Social Welfare Board acted in excess of its powers in granting the rehearing. This seems a point of considerable force (see *Olive Proration etc. Com.* v. *Agricultural Prorate Com.*, 17 Cal.2d 204 [109 P.2d 918]), but in our view of the case it is not necessary for us to pass upon it.

Basically the question presented to us is whether on the admitted facts petitioner brings himself within the class of persons entitled to an allowance under part I, division V, Welfare and Institutions Code since that part of Welfare and Institutions Code was recast by the Legislature in 1941. Even if the original order of the Social Welfare Board is still in full force and effect, if that order on the admitted facts was contrary to law, mandamus will not issue to compel the making of illegal payments to petitioner. (*California Highway Com.* v. *Riley*, 192 Cal. 97, 112 [218 P. 579]; *Walton* v. *McPhetridge*, 120 Cal. 440 [52 P. 731].)

To focus attention on the point directly involved, by the 1941 amendment (Stats. 1941, p. 2302) chapter I, part I, division V, Welfare and Institutions Code was substantially amended and a new chapter III was for the first time adopted. Under chapter I a needy blind person who became blind outside of this state is qualified to receive the aid therein provided for if he has been a resident of this state for one year immediately preceding his application and for five years out of the last nine (§ 3043, Welf. and Inst. Code), while to be

eligible for aid under chapter III he must have been a resident of the state for ten years continuously (§ 3431, Welf. and Inst. Code). It follows that if petitioner's case falls exclusively under the provisions of chapter III he is lacking in the required residence qualification for aid.

The determination of the question thus presented necessitates a consideration of the relevant statutory provisions and somewhat of their history.

Prior to July 1, 1941 (the effective date of the recasting of the provisions for aid to the blind by Stats. 1941, p. 2302), the entire subject of payments for aid to the needy blind was covered by chapter I, part I, division V, Welfare and Institutions Code. Section 3000 of that chapter then read as follows:

"The purpose of the provisions of this chapter is to relieve blind persons from the distress of poverty, to enlarge the economic opportunities of the blind, and to stimulate the blind to greater efforts in striving to render themselves self-supporting."

In 1941 this section 3000 was repealed. (Stats. 1941, p. 2303.) At the same time as a part of the new chapter III the Legislature adopted section 3400 Welfare and Institutions Code, reading:

"The purpose of this chapter is to provide a plan for this State whereby the blind residents of this State may be encouraged to take advantage of and to enlarge their economic opportunities, to the end that they may render themselves independent of public assistance and become entirely self-supporting.

"To achieve this objective, resources and income beyond the necessities of bare decency and subsistence are required. This chapter, by allowing the retention of necessary income and resources by those of the blind showing a reasonable probability of being able and willing to undertake the acquisition of resources and income necessary for self-support, will encourage them in their efforts to become self-supporting."

It seems clear to us that by the repeal of section 3000 which included among the purposes of chapter I the enlarging of the economic opportunities of the blind and the stimulation of their efforts to render themselves self-supporting, and by the simultaneous adoption of section 3400 stating somewhat more elaborately that those were the purposes of the newly

enacted chapter III, the Legislature intended to remove cases of allowance to the blind for the purpose of economic rehabilitation, as distinguished from subsistence, from chapter I and to provide for them exclusively in chapter III. No other purpose for the repeal of section 3000 has been suggested and we can think of none.

This conclusion is reinforced by the provisions of section 8 of the 1941 enactment (Stats. 1941, p. 2312) which reads:

"Between the effective date of this act and October 1, 1941, the counties shall review all grants of assistance under chapter I of part 1 of division 5 of the Welfare and Institutions Code, relating to the needy blind, to determine which persons are eligible for assistance under chapter I of part 1 of division 5 of the Welfare and Institutions Code, relating to the needy blind, and which persons are eligible for assistance under chapter III of part 1 of division 5 of the Welfare and Institutions Code, relating to the partially self-supporting blind residents of this State."

Herein is a recognition that after the effective date of the act some persons would remain eligible for relief under chapter I and others who formerly had been receiving aid under chapter I would become eligible only under the newly enacted chapter III. The latter class obviously would be those who were devoting a portion of their income or property to the effort to render themselves self-supporting, into which class petitioner falls. The former class would be those who had not sufficient income or property to meet (to quote the language of section 3400) "the necessities of bare decency and subsistence."

The reasons for this classification become obvious by reference to section 9 of the 1941 statute. (Stats. 1941, p. 2312.) That section, after declaring the statute an urgency measure to become effective July 1, 1941, recites:

"In order to conform fully and completely to the requirements of the Federal Social Security Act, the public assistance program of this State for the blind must provide . . . (c) after July 1, 1941, (i) that, in determining need, the income and resources of the individual shall be considered. . . . If this is not done, the above mentioned public assistance program of this State will not be approved by the Federal Social Security Board and the State will not be eligible for Federal financial assistance. This act makes the changes necessary to provide complete conformity and to secure such approval and

provides for the assistance of those blind residents of this State whose grants of assistance are adversely affected by such conformity."

In the recited requirement of the Federal Social Security Board "that in determining such need, the income and resources of the individual shall be considered" is found the reason for the repeal of section 3000 providing, as it did, not only for relief from the distress of poverty but also for enlargement of economic opportunity and stimulation of efforts for self-support.

In the recited purpose to provide "for the assistance of those blind residents of this State whose grants of assistance are adversely affected by such conformity" we find the reason for the enactment of chapter III.

Compelled to an apparent choice of sacrificing federal assistance or sacrificing its rehabilitation program, the Legislature found a means to do both, by providing in chapter I for aid to the blind for subsistence only in strict conformity with the federal requirements, and by providing in chapter III for an entirely different type of aid to be given for rehabilitation without federal assistance.

In doing this the Legislature retained in section 3043 the residence requirement of five years out of the last nine in strict compliance with the provisions of the Federal Social Security Act (42 U.S.C.A. 1202 (b) (1)); but in section 3431 provided a ten year residence requirement for aid under chapter III, since that chapter sets up a form of relief entirely outside of the federal program.

This is wholly consistent with our legislative policy since the ten year residence requirement is basic even for relief under chapter I (sec. 3041 Welf. and Inst. Code) and section 3043 relaxes that residence requirement only "if, when and during such time as grants in aid are provided by the United States Government."

However unfortunate it may be in his individual case we are satisfied that under the statute as enacted petitioner lacks the residence qualifications for the type of aid herein sought by him.

The alternative writ is discharged and a peremptory writ denied.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied March 27, 1943, and petitioner's application for a hearing by the Supreme Court was denied April 26, 1943.