[S. F. No. 18263. In Bank. May 25, 1951.]

C. RAY HOLBROOK, Appellant, v. BOARD OF EDUCATION OF THE PALO ALTO UNIFIED SCHOOL DISTRICT et al., Respondents.

K. R. McDougall for Appellant.

Tanner, Odell & Taft, Robert A. Odell, Gardiner Johnson and Thomas E. Stanton, Jr., as Amici Curiae on behalf of Appellant.

Hardy, Carley & Brenner and John M. Brenner for Respondents.

CARTER, J.—This is an appeal on an agreed statement from a judgment denying a petition for writ of mandate. Respondents are the the Board of Education of the Palo Alto Unified School District, the individual members of the board, and the superintendent of schools of the district. Appellant, claiming full-time tenure rights by virtue of his full-time employment in the school district for seven consecutive school years, seeks to compel respondent board to reinstate him to his prior position and to employ him as a full-time employee of the district in a position or positions requiring certification qualifications of a proper grade. The board contends that appellant has acquired no more than "one-fourth time tenure" and the trial court so held.

At all times pertinent appellant held valid life elementary and secondary teachers' credentials and a valid life general administrative certificate. On August 1, 1940, respondent board adopted a resolution that appellant "be elected Business Manager and Principal of the Evening High School to succeed Mr. Charles L. Suffield . . . and that he serve as other certificated employees on a probationary basis for three years." The following day the district superintendent of schools addressed a letter to appellant which contained the following:

"At a special meeting of the Board of Education held on August 1st you were on my recommendation elected Business Manager and Director of Adult Education, which includes being Principal of the Evening High School, to succeed Mr. Charles L. Suffield resigned, at a salary at the rate of $3,000 a year, and your service shall be thought of in the same relation as other certificated employees who serve under the rules of the Board on a three-year probationary basis."

On August 8, 1940, pursuant to section 5.403 of the School Code (now Ed. Code, § 13004), the secretary of the board gave written notice to the county superintendent of schools that the school district had employed appellant "to render service in a full time position requiring certification qualifications, in the following capacity: Business Manager and Principal of Evening High School—he has been classified by this board as a probationary employee."

Appellant testified that he performed the following business management duties during the school year 1940-1941: Directed the accounting for the school system and the issuing of purchase orders and other financial contracts; supervised the making of the monthly payroll for all district employees; directed the management of the cafeteria; took care of

school funds collected through the principals and set up an accounting plan concerning such funds; made a continuous study of the types of equipment and supplies required in the school system, kept inventories thereof and directed the storing and distribution of such items; took care of the business documents and records; directed the work of custodians, gardeners and maintenance men and selected persons to do such work; had charge of the school district transportation system; helped make the budget and administered it; assisted the district superintendent in drafting and revising salary schedules and rules and regulations; planned and conducted school elections; furnished information to the school employees and others on matters of school law, salary reduction, retirement system, income tax procedures and group insurance claims; made claims for reimbursement from the state and federal governments for special activities such as child care centers, adult education activities, and the cafeteria.

Appellant also testified that the evening high school provides classes for adults; that the duties of the principal of that school involve scheduling classes for adults, selecting teachers, making reports to the state and superintendent, and general direction of the adult education program. Holbrook and his secretary, Mrs. Young, testified that appellant had to interview prospective teachers.

The agreed statement recites that appellant was employed for the school year 1941-1942 to serve as ''Business Manager and Principal of the Evening High School.'' No contracts were issued for that year and there were no minutes of the board showing his election. He performed the same duties as in the first year and also started what was called the National Defense Training Center—a program for training adults for war production. With another man selected as principal of the center, appellant had to do the preliminary organizing work, select the teachers, make rules and regulations, and direct the program in general. The center involved from 15 to 20 teachers and the training of 400 to 500 men every day. It was operated 24 hours a day during the war years.

On May 7, 1942, respondent board adopted a resolution that appellant ''be employed as Director of Adult Education and Business Manager for the school year 1942-1943 at an annual salary of $3840.00.'' Appellant accepted a formal offer of employment which was in the following form (italicized portions indicate blank spaces as filled in):

''You are hereby notified that at a meeting of the govern-

ing board of *Palo Alto Unified School* district held May 7,
1942, you were elected to serve as a full time *Business Mana-
ager & Director of Adult Educ.* part time for the school year beginning
July 1, 1942 and ending June 30, 1943.

"The following conditions of employment have been stipu-
lated by the governing board and are hereby expressly made
a part of this contract: . . .

"4. You are hereby classified by this board as a probation-
ary employee, subject to acceptance of this offer."

Neither the words "full time" nor "part time," preceding
the title of the position, was crossed off. The notice of employ-
ment sent to the county superintendent was the same as that
of August 8, 1940, quoted above. During the year 1942-1943
appellant served as director of adult education and a Mr.
Ruppel served as a part time principal of the evening high
school. Otherwise, Holbrook's duties were the same as in
the preceding year. Ruppel entered the armed forces in
November, 1943, and appellant served as principal until Feb-
ruary, 1944. Thereafter a Mr. Stone was principal of the
evening high school until Ruppel's return on February 1,
1946. Ruppel testified that he has been a full time principal
since his return; that appellant, as director of adult educa-
tion, has been his immediate supervisor during all the time
that he, Ruppel, has been principal.

Respondent board passed a resolution on May 13, 1943, that
appellant "be elected to devote three-fourths of his time as
Business Manager and one-fourth of his time as Director of
Adult Education for the school year 1943-1944," the fourth
consecutive year of appellant's employment in the school dis-
trict. The following day the district superintendent sent a
letter to appellant, stating:

"At the regular meeting of the Board of Education held
May 13, 1943, you were elected to serve as an employee of the
Palo Alto Unified School District for the school year 1943-1944
in the following capacity—one-fourth time as director of
adult education, and three-fourths time as business manager.
The annual salary voted you was $4020.00."

Appellant's letter of June 3, directed to the board, accepted
his appointment "in accordance with your notice of May

14th.'' Holbrook signed a formal contract on June 5, which stated (blanks filled in with italicized words and figures):

''You are hereby notified that at a meeting of the governing board of the *Palo Alto Unified School* district held *May 27, 1943,* you were elected to serve as ~~full-time~~ *one-fourth time* ~~part-time~~ as Director of Adult Education—*three fourths time as Business Manager (non-certificated)* for the school year beginning July 1, *1943,* and ending June 30, *1944.*

''The following conditions of employment have been stipulated by the governing board and are hereby expressly made a part of this contract:

''1. Your annual salary for the school year in the above named position will be *$4200.00* . . .

''4. You are hereby classified by this board as—*Three-fourths time as Business Manager (Non-Certificated)*—a permanent *one-fourth time as Director of Adult Education* employee, subject to acceptance of this offer . . .''

. A letter from the district superintendent read as follows:

''Enclosed is your offer of employment for the school year 1943-1944. Your assignment will be one-fourth time as Director of Adult Education for which you will be paid $1050.00 per year, and three-fourths time as Business Manager, for which you will be paid $3150.00 per year. This makes a total annual salary of $4200.00 . . .

''As Director of Adult Education you are classified as a one-fourth time permanent employee. In that the position of Business Manager requires no certification, you are employed three-fourths time as a non-certificated employee.''

Appellant's testimony was that when he received this contract he went to see the district superintendent and told the latter that ''the contract was not in harmony with the minutes in two respects: first, it says that the meeting was held on May 27th, when the meeting was held May 13th; and there was no authorization in the minutes for the Board to give me a contract that said only one-fourth permanent tenure, that I had understood that I had been elected to a full-time permanent position on May 13th . . . and he agreed with me, but he said that 'Your argument is that the contract is not important anyway, if it doesn't agree with the minutes, so why fuss about it,' and after discussing it at some length, . . . I

concluded, since they were not attempting to remove me at that time, to let the matter ride [until] they attempted to remove me from my position . . .'' On motion of respondents, this testimony was stricken and appellant assigns that ruling as error.

Other testimony by appellant was that in 1943-1944 (the fourth year) he performed the same services as in the prior year, except that he acted as district superintendent of schools in July, 1944, and, in 1943, he began a study of a proposed junior college. He also served as principal of the evening high school from November, 1943, to February, 1944.

Appellant's contracts for the following three school years (1944 through 1947) recited that he was ''elected to serve as full time Business Manager ($\frac{3}{4}$ time)—Director of Adult Education ($\frac{1}{4}$ time),'' and that he was classified as ''a permanent ($\frac{1}{4}$ time) employee.'' In these years appellant continued with the same duties, except that the junior college study was finished in the year 1944-1945 and the war training program was completed in 1945-1946.

Additional testimony by Holbrook was that he worked at the high school plant during the evenings and at the board of education office in the daytime; that he could only be present at the high school in the evenings, so that he had to carry his adult education work over to the board office and do a great deal of it over there; that, in a similar manner, he would take some business work to the evening school; that there was no definite place where he performed any particular type of duties. Mrs. Young also testified that, insofar as she knew, appellant took care of the various phases of his duties as they came up.

There was no particular conflict in the evidence with respect to appellant's performance of the foregoing duties. Mrs. Young and Dr. Almack, a member of respondent board from May, 1935, to May, 1945, corroborated appellant's testimony to some extent. Dr. Almack testified that administrative employees did certain acts at the request of the district superintendent, although such services had not been officially ordered by the board; that Holbrook performed some services which had not been officially authorized in the minutes of the board and the board accepted those services. With respect to appellant's claim that he served as acting superintendent and had chief responsibility for preparing the school budget, there was conflicting testimony.

Appellant testified that the printed form on which notices of

his employment were given to the county superintendent of schools was used for certificated employees. Throughout his employment, Holbrook's salary was paid by means of one school warrant per month without any indication thereon of any apportionment of salary.

On August 21, 1947, respondent board resolved to discontinue appellant's services as business manager as of September 1, 1947, and to employ him for one-fourth time only to direct adult education. Appellant then instituted the present proceeding to compel his reinstatement to full time employment in the district.

As amended in 1941 (Stats. 1941, ch. 558, p. 1936), section 5.500 of the School Code read as follows:

"Every employee of a school district of any type or class, except a joint union or union high school district with an average daily attendance of 850 or more, maintaining eight or more schools lying not less than six miles apart, who, after having been employed by the district for three complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, except as hereinafter otherwise provided, at the commencement of said succeeding school year be classified as and shall become a permanent employee of the district. . . ." The second paragraph of this section contained the same provision with respect to employees of the excepted class of joint union or union high school districts.

The Palo Alto Unified School District has had an average daily attendance of more than 850 pupils at all times pertinent to this case and it is conceded that appellant's rights are governed by section 5.500. The Education Code went into effect in August, 1943 (Stats. 1943, ch. 71, p. 310), and sections 13081 and 13082 of that code were substituted for the first two paragraphs of section 5.500 of the School Code.

Other pertinent statutes were:

Section 5.430 of the School Code (now Ed. Code, § 13034): "No person shall be employed as principal of a school of six or more teachers, including the principal, unless he is the holder of a valid teacher's certificate and a valid school administration certificate of the same grade as the school to be administered."

Section 5.470 (now Ed. Code, § 13049): "No one shall be employed to supervise the work of teachers for more than half

time during any school week unless he is the holder of a valid teacher's certificate authorizing him to teach in the schools and classes in which he is to supervise instruction and a valid supervision certificate.''

Section 5.471 (now Ed. Code, § 13050) : ''The holder of a valid school administration certificate may supervise general instruction in all subjects.''

The trial court found that appellant's duties were substantially as claimed by him with certain exceptions; that the duties of ''the position of Business Manager'' were of a kind and nature substantially different from the duties of principal of the evening high school and those of director of adult education. It was found as a fact and concluded as a matter of law that three separate and distinct positions were involved.

Other findings were that none of appellant's duties as business manager required the supervision of the work of teachers, nor did such duties require the supervision of general instruction in all subjects; that some of his duties as director of adult education required the supervision of general instruction in all subjects; that appellant was required to, and did, devote one fourth of his time to the duties of director of adult education and three quarters of his time to the duties of business manager for the years 1943-1944 through 1946-1947; that he is and was able and willing to render full and satisfactory service to respondent board in a position or positions requiring certification qualifications.

It was concluded that none of appellant's duties as business manager required certification qualifications; that the position of principal of the evening high school did require such qualifications; that some of his duties as director of adult education required certification qualifications; and that by virtue of his employment for one-fourth time as director of adult education for the school year 1943-1944, appellant was entitled to classification as a permanent one-fourth time employee of the school district, but he was not entitled to permanent full time employment.

Appellant contends that he held one full-time certificated position in the school district, whereas respondents take the view that the contrary determination of the trial court is a finding of fact which is supported by the evidence and that, in any event, the trial court correctly held as a matter of law that three separate positions were involved because of the different nature of the services required by employment in the different capacities.

Our attention has not been directed to any decisions or statutory provisions dealing with the main question presented in this case. The soundness of the reasoning in the few decisions attempting to define the term "position or positions requiring certification qualifications," as found in former section 5.500 of the School Code, *supra,* may be considered somewhat questionable in view of the number of statutory amendments which have changed the law with respect to the points actually decided in such cases. (See note, 24 Cal.L.Rev. 441, 442, setting forth the changes effected by the 1935 amendments to the School Code with references to prior decisions.)

In *Cullen* v. *Board of Education* (1932), 126 Cal.App. 510 [15 P.2d 227], the petitioner had been assigned to duty as a teacher in day high school classes for eight years and as an evening school instructor for six years when he was dismissed from the latter function. In compelling his reinstatement, it was said (pp. 512-513) : "The power of the Board of Education to assign its employees to these various duties is not questioned and when such assignments have been made they must be taken as making up the 'position, or positions' to which the Tenure Law applies.

"Here it is admitted by the demurrer that petitioner served as teacher in both day and evening schools for a period of more than six years prior to his dismissal, and that his total period of service in any one day did not exceed eight hours. We are inclined to hold that these assignments constitute but one 'position' within the meaning of the Tenure Law and that petitioner, having served in that 'position' for more than the probationary period, has become automatically re-elected to that position."

*Anderson* v. *Board of Education* (1932), 126 Cal.App. 514 [15 P.2d 774, 16 P.2d 272], involved similar facts with the exception that the petitioner had served as principal of the evening school. In reinstating him to that office (and holding that he had acquired tenure as such under the provisions of the San Francisco charter), the court stated (pp. 520-521) :

"In this connection we should add that we are not impressed with respondents' insistent argument that our judgment grants *double* tenure to these teachers and principals. . . . [W]e must interpret the word 'position,' as used in the school law and in the charter, as applying to the 'employment' of the individual. If they were officers the term 'position' would be interpreted with greater strictness as to the term, duties and place of employment. But, generally speaking, these

factors do not control the relation of master and servant, or employer and employee. The latter may be assigned to such duties within his employment as the employer may designate. Here the employer assigned the employee to teach in two separate school buildings and permitted him to continue in that *service* beyond the probationary period and to become classified as a permanent employee—not for a part of the service only—but for all. The tenure, therefore, runs to a position of employment, *or service,* of equal grade and rank to that to which the statutory classification has applied. . . .''

In denying a hearing in these cases, this court withheld approval from the portion of each opinion ''which holds that the two employments of petitioner constitute but one position.'' (126 Cal.App. at pp. 513 and 521.) Such a holding was unnecessary to the decisions, in that, assuming the petitioners held two part-time positions, they had acquired tenure in both capacities and were entitled to permanent full-time employment.*

In *Mitchell* v. *Board of Trustees* (1935), 5 Cal.App.2d 64 [42 P.2d 397], the petitioner had taught for four hours a week in the evening school, in addition to teaching full time in the day high school. The trial court entered judgment restoring him to his ''two positions.'' It was held that the reinstatement of the petitioner to his evening school employment was error. The court stated (pp. 69-70) : ''In effect, the petitioner seems to contend that he acquired one position as a teacher in the regular high school and another and different position through his work in the evening high school. In *Cullen* v. *Board of Education, supra,* the court was inclined to hold that teaching part of the time in a day school and part of the time in an evening school constituted but one position. In denying a hearing the Supreme Court withheld its approval of that proposition. It is unnecessary to decide that question here since this petitioner had, in any event, acquired permanent status as a full-time teacher in the day school. . . .

''While a permanent status may be acquired through service in one or more positions, we think the status when acquired cannot apply or relate to anything in excess of the regular and ordinary full-time employment of a teacher. We take it that these tenure laws, at most, give to a teacher a right to continue in full-time employment without arbitrary

---

*For the present provisions with respect to service in both day and night schools, see section 13086 of the Education Code.

dismissal, and that they were not intended to apply to or cover any extra work which goes beyond the usual full-time employment.''

Since Holbrook is not claiming anything more than the right to permanent full time employment, the Mitchell case is not helpful.

Former sections 5.710 and 5.711 of the School Code,* which authorized the dismissal of permanent employees of a school district when that becomes necessary ''on account of the discontinuance of a particular kind of service in such district,'' were considered in *Walsh* v. *Board of Trustees* (1934), 2 Cal.App.2d 180 [37 P.2d 700]. The teacher, a permanent employee, had taught vocal music four periods a day in the senior high school and the same subject in the junior high school for two periods a day. Upon the discontinuance of the teaching of vocal music in the senior high school, the petitioner contended that he was entitled to full-time work in the junior high school in preference to a probationary teacher. In disposing of this contention, the court commented (pp. 182-183):

''The main question here is whether the discontinuance of teaching vocal music in this senior high school while the teaching of the same subject was continued in the junior high school is 'a discontinuance of a particular kind of service in the district' within the meaning of the statute. A closely related question is whether an employment as teacher of a certain subject in both a senior high school and a junior high school, which has resulted in a permanent status, constitutes one position or two positions within the meaning of the School Code.'' In discussing the difference between junior and senior high schools, it was said: ''[I]t would seem that a teaching service in two schools which are totally different in kind and nature, should be held to constitute two positions rather than one and that the classification statute in question was intended to and does cover such a situation.'' (2 Cal.App. 2d at p. 184.) (See, also, *Unruh* v. *Piedmont High School Dist.*, 4 Cal.App.2d 390, 393 [41 P.2d 212].)

Respondents contend that this case establishes the rule that an employee of a school district occupies two part-time positions if he is employed to perform two different kinds of services; that, therefore, the trial court correctly held that appellant's employment involved three different positions and that he acquired only part-time tenure. However, it is evident

---

*The present statute is section 13651 of the Education Code.

that the statements of the court with respect to how many positions were present in the Walsh case were dicta; that the only question decided was that a particular kind of service had been discontinued in the district. Moreover, for reasons hereinafter stated, we are not inclined to follow the concept expressed in the Walsh opinion—that an employee of a school district necessarily holds as many positions as the number of kinds of duties he is required to perform.

We have concluded that the reasoning set forth in *Cullen* v. *Board of Education, supra,* is sound.* Former section 5.530 of the School Code and the present section 13201 of the Education Code give school boards the power, and make it their duty, ''to fix and prescribe the duties to be performed by all persons in public school service in the school district.'' Here, respondent board assigned various duties to appellant, and, as stated in the Cullen case, *supra,* page 512, ''when such assignments have been made they must be taken as making up the 'position, or positions' to which the Tenure Law applies.'' If all or some of the duties assigned to an employee require certification qualifications, then the employee holds a position requiring certification qualifications within the meaning of the statute; that is, under the statutory provisions, such a position can only be held by a person having the requisite certificate or certificates. Neither section 5.530 of the School Code nor section 13201 of the Education Code requires the local board to assign only certificated duties to any one employee, and we are referred to no authority which necessitates a holding that, upon reelection for the fourth consecutive school year, an employee of a school district becomes entitled to permanent status only as to the amount of time devoted to certificated duties during the probationary period. At least, under the circumstances here, such a conclusion would be administratively impractical, and would, in effect, deprive certificated employees of the protection of the tenure laws in cases where they are required to perform some services which could have been performed by noncertificated employees. To make the employee's tenure rights dependent upon the duties assigned to him for which a certificate was required, allocated according to time, would mean that the employee would attain permanent

---

*We are not here concerned with the applicability of that reasoning to the particular facts of the Cullen case. Neither do we express any opinion as to whether the present provisions of section 13086 of the Education Code contemplate part-time or full-time tenure in the Cullen and Anderson situations.

status on a part-time basis in every case where, in accordance with the authority given the local board, he was assigned some other duties during his probationary period. Obviously, to one who must earn his living from his profession, such part-time tenure rights would be valueless. In the absence of some compelling reason, we cannot assume that the Legislature intended such a result.

That full-time employment normally leads to full-time tenure if some of the duties allocated to the school district employee require certification is indicated by the cases arising prior to the 1935 amendment to section 5.502 of the School Code, which dealt with the rights of persons employed both as principals and as teachers during the probationary period. Prior to 1935, section 5.502 read: ''No person employed in an administrative or supervisory position requiring certification qualifications shall be classified as a permanent employee other than as a classroom teacher. . . .'' In construing this section and its predecessor, section 1609 of the Political Code, it was held that one employed solely as a principal could not acquire permanent status (*Bland* v. *Board of Trustees,* 67 Cal.App. 784 [282 P. 395]), but that a person employed to serve both as a principal and as a teacher could acquire tenure. (*Gastineau* v. *Meyer* (1933), 131 Cal.App. 611 [22 P.2d 31]; see *Klein* v. *Board of Education* (1934), 1 Cal.2d 706 [37 P.2d 74]; *Work* v. *Central Union H. S. Dist.* (1935), 6 Cal.App.2d 626 [44 P.2d 1047].) The following portion of the opinion in *Gastineau* v. *Meyer, supra,* pp. 615-616, is pertinent here:

''The language of this statute clearly implies that, while one engaged *solely* in an administrative or supervisory capacity may not be classified as a permanent principal, yet if at the same time he also successfully performs the required services as a teacher, he is nevertheless entitled to permanent tenure 'as a classroom teacher.' . . . We are satisfied that the law does not authorize permanent classification as a principal or supervisor, but that the act does guarantee permanent tenure to all other employees, including classroom teachers who have been successfully employed by the district for two or three complete consecutive school years in positions requiring certification qualifications, in spite of the fact that such employee may have been primarily hired as a principal and actually devotes a part of his time to the performance of the duties of that officer. Since the respondent was qualified as a teacher *and actually engaged in teaching* for the required length of time and in strict compliance with the requirements

of the statute, he certainly should not be deprived of his vested right to permanent tenure as a teacher merely because he also performed other services at the same time.'' (Italics added.)

Apparently it was never thought that such employees could be reduced to a part-time status, in proportion to the amount of time required to be devoted to teaching activities as contrasted with other duties, after attaining classification as permanent employees.

While no authority on the question has been cited, we may assume that part-time employment in a position requiring certification qualifications during the period of probation will result in the right to permanent employment on a part-time basis only,* and that, with the same result, the local board of education may contract to employ one person in two part-time positions involving substantially different kinds of services, only one of which positions is certified. The relationship between respondent board and appellant is that of employer and employee and this relationship is created by contract. (*Gould* v. *Santa Ana H. S. Dist.* (1933), 131 Cal. App. 345, 349-350 [21 P.2d 623].) In *Taylor* v. *Board of Education* (1939), 31 Cal.App.2d 734, 743 [89 P.2d 148], it was said: ''The contract can specify the salary, subject to a statutory minimum, the duties to be performed, the number of hours per day which the teacher shall perform his services, the age and class of students which will be taught, and other details relating to actual employment.'' (See, also, *Rible* v. *Hughes*, 24 Cal.2d 437, 443 [150 P.2d 455, 154 A.L.R. 137]; *Richardson* v. *Board of Education*, 6 Cal.2d 583 [58 P.2d 1285]; *Hogsett* v. *Beverly Hills School Dist.*. 11 Cal.App.2d 328 [53 P.2d 1009]; *Wood* v. *Los Angeles City School Dist.*, 6 Cal.App.2d 400 [44 P.2d 644].) The result of the tenure statutes ''was not to make the relation any the less one originating in contract, but to annex to contracts of employment when repeated for a sufficient time certain legal consequences.'' (*Abraham* v. *Sims*, 2 Cal.2d 698, 710 [34 P.2d 790, 42 P.2d 1029]; see, also, *Kacsur* v. *Board of Trustees*, 18 Cal.2d 586, 591 [116 P.2d 593].)

Insofar as permitted by the statutes, the formal contracts, the resolutions appointing appellant, and the rules

---

*See section 13842 of the Education Code, prescribing the minimum annual salary to be paid each person employed in a full-time or part-time position requiring certification qualifications and defining ''full time.''

and regulations of the board fix the status of appellant during the first three years of his employment. (*Fry* v. *Board of Education*, 17 Cal.2d 753, 760 [112 P.2d 229].) ■ The following factors, as detailed above, show that appellant was employed in one full-time position, rather than two part-time positions: The resolution of August 1, 1940; the letter of the district superintendent dated the following day; the notice sent to the county superintendent of schools on August 8, 1940; the reelection of appellant in the same capacity in 1941; the resolution, contract, and notice to the county superintendent for the third year; the fact that appellant performed his various duties as they came up, without reference to time or place, and that this was necessary by the nature of his employment; the payment of appellant by a single, unapportioned salary.

■ Respondents contend that the fact that the regulations of respondent board separately list the duties of business managers and principals is evidence upon which the trial court could base its conclusion that appellant was employed in two different part-time positions during each school year. But the regulations do not purport to state what shall constitute a single full-time position and there is no indication that the employment of one person to carry out the various duties specified under the different headings should make up two employments or positions. Also, the fact that the regulations do not contain any reference to the duties relating to the direction of adult education, and that appellant's activities included general administrative work not ordinarily pertaining to any specific office, indicates the fallacy of considering a position in terms of a title rather than in terms of a group of duties assigned to an employee.

■ Neither does the appointment of Ruppel to serve as evening school principal, first on a part-time basis in 1942 and subsequently for full time, tend to show that appellant had been occupying two part-time positions. The district superintendent's letter of August 2, 1940, informing appellant of his employment, shows that it was intended from the beginning that appellant should direct the adult education program and that that work should include being principal of the evening high school. Ruppel's testimony indicates that he was appointed, not to take over a part-time position formerly held by appellant, but to assist appellant with the adult education work which appellant continued to do.

From the foregoing discussion it is apparent that this

court is not bound by the trial court's determination that appellant held three different positions during the first three years of his employment in the district and that that conclusion is predicated upon either an erroneous construction of the words "position or positions requiring certification qualifications" as used in section 5.500, or a misconception of the terms of appellant's employment as expressed in the documentary evidence and the testimony, which is generally undisputed, with respect to the duties assigned to, and performed by, appellant.

■ Having been elected to a full-time position for three consecutive school years, some of the duties of which required certification qualifications, appellant is entitled to permanent full-time employment in the district if he was reelected for the fourth year in a position requiring certification qualifications. ■ Respondents assert that the resolution in May, 1943, and the contract accepted by appellant for the fourth year of his employment (1943-1944), and for succeeding years, demonstrates that two part-time positions were involved, at least beginning with the fourth year. We may assume, without deciding, that such a resolution and formal contract would have had the asserted effect if they had been made during the probationary period. But appellant and the California Teachers Association in an amicus curiae brief contend that the form of the fourth year contract was adopted as a device to evade the full effect of the tenure laws and should be held ineffectual to accomplish that purpose. It has been held that resignations of teachers exacted at the close of their probationary period as a condition of reemployment for the next year in the same capacity are not effective so as to deny tenure to teachers who in fact continue service in the school district. (*Sherman* v. *Board of Trustees* (1935), 9 Cal.App.2d 262 [49 P.2d 350]; *Mitchell* v. *Board of Trustees* (1935), 5 Cal.App.2d 64, 68 [42 P.2d 397].) The situation in the present case is substantially similar. The evidence shows that appellant was required to, and did, perform essentially the same services during the fourth year and thereafter as in the first three years of his employment. ■ In this connection, appellant's testimony to the effect that he protested concerning the form of his fourth year contract was material (*Merman* v. *Calistoga Joint Union H. S. Dist.*, 5 Cal. 2d 438 [55 P.2d 195]), and should not have been stricken.

■ The failure of respondent board to classify appellant as a full-time permanent employee did not prevent him from

attaining that status, for, as stated in *La Rue* v. *Board of Trustees*, 40 Cal.App.2d 287, at 293 [104 P.2d 689], with respect to school districts, such as the one involved here: ''[W]hen by the operation of law a teacher is entitled to classification as a permanent employee the failure of the school board to so classify such teacher does not prevent the classification, but the same inures by operation of the statutes.'' (See, also, *La Shells* v. *Hench*, 98 Cal.App. 6, 12-13 [276 P. 377].) ██ Under the circumstances, we hold that appellant was reelected for the year 1943-1944 to a position requiring certification qualifications and was thereafter entitled to full-time permanent employment in the school district.

This conclusion is not in conflict with *Work* v. *Central Union H. S. Dist.*, *supra*, 6 Cal.App.2d 626, or *Crawford* v. *Board of Education*, 20 Cal.App.2d 391 [67 P.2d 348], for in those cases the petitioners did not continue doing the same work after the expiration of their probationary periods.

██ It does not follow, however, that appellant is entitled to continue in an administrative position similar to that held by him. Section 5.502 of the School Code was amended in 1935 (Stats. 1935, ch. 690, § 8, p. 1881) to read as follows: ''. . . Persons employed in administrative or supervisory positions requiring certification qualifications upon completing a probationary period, as hereinabove provided, including any time served as a classroom teacher if any, in the same district, shall, in districts having an average daily attendance of 850 or more pupils, be classified as and shall become a permanent employee as a classroom teacher. . . .'' This portion of section 5.502 is now section 13089 of the Education Code with some slight changes in terminology. While the present statute makes it clear that a principal or other supervisory employee need not perform any teaching services in order to be entitled to tenure, there has been no change in the provision that such persons become permanent employees as classroom teachers after the probationary period is served. (See *Griffin* v. *Los Angeles City H. S. Dist.* (1942), 53 Cal.App.2d 350 [127 P.2d 939].) Accordingly, appellant is entitled to be classified as a permanent classroom teacher. This does not, of course, affect our conclusion that respondent board exceeded its authority in purporting to reduce appellant to part-time employment.

The agreed statement recites that the evidence concerning the amount of salary due appellant has not been included in

the statement for the reason that it is contemplated that, if appellant should prevail on this appeal, the case will be remanded to the trial court for a determination of that question. In view of this stipulation and the fact that the question has not been argued on this appeal, no opinion is expressed on the matter of salary.

The judgment is reversed with directions to the trial court to proceed in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

Respondents' petition for a rehearing was denied June 18, 1951.