[Civ. No. 22433.   Second Dist., Div. Two.   Feb. 24, 1958.]

ROBERT C. TITUS, Appellant, v. LAWNDALE SCHOOL DISTRICT et al., Respondents.

S. V. O. Prichard for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), William E. Lamoreaux, Assistant County Counsel, and James W. Briggs, Deputy County Counsel, for Respondents.

ASHBURN, J.—Petitioner Robert C. Titus appeals from a judgment denying his prayer for writ of mandate requiring the Lawndale School District and its board members to reinstate him in his position as superintendent of schools of said district and to pay his salary as such.

Pursuant to section 1303, Education Code,[1] petitioner was elected superintendent of said district for a term of four

---

[1] All references to code sections point to the Education Code unless otherwise indicated.

years[2] beginning July 1, 1955. The statute provides (§ 1306) that the superintendent, in addition to other powers and duties granted to or imposed upon him, (a) shall be the chief executive officer of the governing board of the district, (b) except where otherwise provided by the board shall prepare and submit the budget, and (c) subject to approval of the board shall assign all certificated employees to positions in which they are to serve. (As amended in 1957, § 1306 also requires the superintendent to enter into contracts on behalf of the district as contemplated by § 18071, also enacted in 1957.) Pursuant to this election the board made a written contract of January 20, 1955, with petitioner employing him as superintendent for the four-year term at a salary of $10,000 per annum, adjustable upward but not otherwise. It contains this paragraph: "The duties of the district superintendent shall be to serve as District Superintendent in charge of all educational and financial matters pertaining to the operation of the school district and to serve as chief executive officer of the Board of Trustees." Though required to have a school administration certificate and a teacher's certificate (§ 1304), the superintendent is not hired as a teacher but as a supervisory and executive functionary. His position in the school system is unique, as will be shown presently.

While statutory methods are prescribed for discharging permanent employees (§ 13521 et seq.), and probationary employees (§§ 13581-13582), there is no provision for discharging a superintendent holding a contract for a term of years; on the contrary, section 1303.1 authorizes termination, by mutual consent only, of "the term of employment of, and any contract of employment with, the superintendent of schools" effective on the next succeeding first day of July, and his reelection and reemployment upon other mutually agreed terms and conditions. Section 1303.2 provides that six months advance written notice must be given the superintendent if the board decides not to renew his contract, failing which the superintendent shall be deemed reelected for a term equal to the existing one and upon the same conditions.

On January 5, 1956, six months after the beginning of his term, the school board undertook to discharge appellant, did

---

[2]This section also applies to associate superintendents, deputy superintendents and assistant superintendents. The applicable language is the following: "Any district superintendent of schools, associate superintendent of schools, or deputy city or district superintendent of schools, or assistant city or district superintendent of schools may be elected for a term of four years."

so without affording a hearing, and thereafter prevented him from discharging any of the duties or exercising any of the prerogatives of superintendent of schools. The board members went through the form of filing charges against petitioner, gave him five to ten minutes to answer the charges, which he declared to be insufficient time as was manifestly true. No evidence was produced or tendered in support of the charges. Then the board adopted the following resolution: "A motion was made that the Board relieve Robert C. Titus of all duties and responsibilities as Superintendent of the Lawndale Elementary School District effective immediately and that Mr. Titus be placed on paid inactive leave through February, 1956, at which time Mr. Titus' contract as Superintendent and his employment with the District be terminated." On February 2, 1956, appellant made written demand for a hearing on the charges pursuant to section 13522, which relates to dismissal of a permanent employee. This the board denied upon the ground that said section was inapplicable. The board held no hearing and filed no suit pursuant to section 13529 (quoted *infra*). Thereupon appellant filed his mandamus suit on March 23, 1956. This was followed on April 19, 1956, by a notice from the board to appellant purporting to terminate his services as a "probationary employee": "You are hereby notified that your services as a probationary employee in the Lawndale School District will not be required during the ensuing year (1956-1957 school year)."

The trial judge ruled: "I think the case of Board of Education against Swan, 41 Cal.2d, 546 [261 P.2d 261] and Holbrook against Board of Education in 37 Cal.2d, 316 [231 P.2d 853], are determinative; that the Board of Education can cancel a contract of the superintendent at any time, subject, of course, to his remedy, if any, for breach of contract. . . . The petitioner's rights to work for the Board of Education were by virtue of his contract with the Board and not by virtue of statute under which most civil service and certificated personnel are employed. Furthermore, his rights as a probationer, that is to say a probationer who has been hired because of the fact that he had to have a certification, in fact two certificates, were in my opinion cut off by the notice of May of 1956." The formal findings say: "[T]he court makes no finding with respect to whether or not petitioner performed any or all conditions of the contract to be performed on his part, the determination of this mandamus proceeding being without prejudice to petitioner's right to bring an action for

breach of contract; the court specifically makes no finding with relation to the allegations set forth in paragraph V of the Amended Petition and paragraph II of the Answer thereto.'' Said paragraph V is an averment of full performance by petitioner until prevented from further rendition of services by respondents. Paragraph II of the answer denies that allegation and specifies numerous alleged failures and refusals on petitioner's part to properly perform his contract.

The major questions presented by this appeal are whether a school board may discharge a superintendent whom it has hired for a four-year term; if so, what method should be pursued; and what, if any, remedy does the superintendent have if wrongfully ousted from office.

■ Correct solution of these questions requires studious recognition of the difference between the superintendent's contract rights and his potential tenure rights under the teachers' tenure act (§§ 13081-13104). Teachers fall into four classifications,—permanent (§§ 13081, 13084), probationary (§ 13101), substitute (§ 13103), and temporary (§ 13104). A permanent employee is one employed in a district having average daily attendance of 850 or more (which Lawndale does have), who, having been employed for three successive school years in a position requiring certification qualifications, is reelected for the next school year in a like position (§ 13081). Such an employee cannot be discharged without filing of charges of misconduct, incompetency or the like (§ 13521), with an opportunity to demand a hearing. If this is done, ''the governing board shall have the option either (a) to rescind its action, or (b) to file a complaint in the superior court of the county in which the school district or the major part thereof is located, setting forth the charges against the employee and asking that the court inquire into the charges and determine whether or not the charges are true, and if true, whether or not they constitute sufficient grounds for the dismissal of the employee, under the provisions of this code, and for judgment pursuant to its findings.'' (§ 13529.) ''If the board elects to file a complaint, the complaint shall be filed within 30 days from the date of the employee's demand for hearing. If the complaint is not filed within such period the board's action shall be deemed to be rescinded and all charges dismissed.'' (§ 13530.) This procedure could not apply to appellant, for he had not served a full year when charges were filed, and it takes three years of service with an election for a fourth year to ripen into permanent status.

■ He did have a potential permanent status, however, for he had been elected for four full years and if permitted to serve would have acquired tenure[3] as a classroom teacher (*Holbrook* v. *Board of Education,* 37 Cal.2d 316, 333-334 [231 P.2d 853]).

A probationary employee is one employed for the school year in a position requiring certification qualifications, who has not been classified as a permanent or a substitute employee (§ 13101); the classification is made at the time of employment and thereafter in the month of July of each year (§ 13102). In other words, a probationary employee is one employed from year to year, who has not served in a certificated job for three successsive years and been elected for a fourth. Appellant was not employed from year to year, but had been elected for four years and given a contract for the same period. A probationary employee cannot be discharged during the school year except for cause, "as in the case of permanent employees" (§ 13581), which language connotes a necessity of following the same procedure as in case of dismissal of a permanent employee. (*Comstock* v. *Board of Trustees,* 20 Cal.App.2d 731, 732 [67 P.2d 694].) However, such employees may be terminated at the end of the school year by mere service of notice under section 13582, which reads: "On or before the fifteenth day of May in any year the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year. . . ." No attempt was made to dismiss appellant under section 13581, and, as later shown, the effort to pursue section 13582 proved abortive.

■ Did the Legislature express in this statute an intention that a superintendent who has been hired for a term of years may be dismissed during that term without his consent? Express means to that end are prescribed in the case of permanent and probationary employees, as just shown; also with respect to substitute (§ 13611) and temporary employees (§ 13631). Nowhere is a superintendent mentioned in such connection except in section 1303.1, which expressly requires his consent to terminate his contract or his term of service. As

---

[3]The term "tenure" is thus defined in *Klein* v. *Board of Education,* 1 Cal.2d 706, 710 [37 P.2d 74]: " '[T]his right of tenure is a right which the teacher enjoys to continue in the position or positions to which he has become elected under the statute—i.e., in a position or positions of a *rank* and *grade* equivalent to that occupied for the probationary period and to which the teacher has thus become "elected" under the statute.' "

he is chief executive officer of the board, in charge of assignment of teachers and other certificated employees and at times in charge of the budget (§ 1306), he alone may be elected for four years and given an effectuating contract;[4] other certificated persons are elected from year to year (§ 13002). Provision for their discharge is made, but none for the superintendent. Permanence of service for the designated term is the dominant thought expressed in the legislation concerning the superintendent. The procedure for terminating a probationary employee at the end of any school year cannot apply to him for it is directly opposed to the more pertinent provision for a four-year employment; the special provision of section 1303 to this effect must prevail over the generalities of section 13582. ■ The superintendent cannot be regarded as a probationary employee except for purpose of computing the accrual of his right to permanent status as a schoolroom teacher.

■ The notion that he may be discharged at will is fallacious. Respondents rely upon the statement in *Stewart* v. *Eaves*, 84 Cal.App. 312, 324 [257 P. 917]: "If the board has full power in the management and control of the school it must be vested with the power to make contracts and unmake contracts." The court was there considering the matter of mutual rescission, upheld the power of the board to enter into one, and the case seems to have been the progenitor of section 1303.1. There is nothing in the opinion to sustain a claim that a school district may make a unilateral rescission of a four-year contract. The controlling principle is stated in *California Highway Com.* v. *Riley*, 192 Cal. 97, 107 [218 P. 579]: "A private individual may grant authority to an agent to execute in his behalf a contract for a certain improvement, but it does not follow therefrom that the agent has authority to commit his principal to a breach of such contract and thus subject the principal to liability for damages. . . . A grant of authority to an agent to execute a contract in behalf of his principal contemplates the performance of such contract, not its breach, and authority to breach a contract is not implied from a mere grant of authority to execute such contract.

"The rule that a state in its contract with individuals is subject to the same rules and liabilities as individuals is itself subject to certain limitations. . . . When, however, the

[4]That is, only he, or his associate, deputy or assistant superintendent may be elected for such term.

state empowers an officer or board to enter into a contract on its behalf, whereby it is to have certain rights and liabilities, and the officer or board has entered into such contract, no officer or board may thereafter act or speak for the state in the matter of such contract, either for the enforcement or termination thereof, unless expressly or impliedly authorized by the state so to do. By the execution of such an authorized contract the state acquires certain legal rights and incurs certain liabilities which are fixed and ascertained, or ascertainable. Thereafter no one can either increase or diminish the rights of the state or increase or reduce its liabilities thereunder unless he has been vested with authority so to do by express grant or clear implication. The state having directed or authorized the making of the contract contemplates its performance and, as in the case of private individuals, the authority to breach such a contract is not to be implied from the mere grant of authority to execute the same.'' The specific holding of the case was that the highway commission could not rescind a highway construction contract, even by consent, for the purpose of entering into a new and more lucrative contract in favor of the contractor.

In *Housing Authority* v. *City of Los Angeles*, 38 Cal.2d 853 [243 P.2d 515], the city of Los Angeles attempted to rescind its prior approval of a low rent housing project and to abrogate a cooperation agreement entered into in accordance with applicable law. The Housing Authority sought and procured a writ of mandate directing the city to perform its agreement. At page 860, the court said: ''The matter presents to this court the question whether the city had the right to rescind the approval of the projects and to abrogate the cooperation agreement under which it had pursued the obligations thereby assumed for a period of over two years.'' At page 868: ''In this as in the other respects the general principle applies that the state grant of the powers and the authority to execute and enter into the contract to exercise those powers contemplates performance of the contract and implies no authority to breach it. (*California Highway Com.* v. *Riley*, 192 Cal. 97, 107-108 [218 P. 579].)'' See also *Cope* v. *County of Sutter*, 206 Cal. 445, 454 [3] [274 P. 750].

Although we find no statutory authority for discharge of a superintendent before the expiration of his contract term, especially where it is a four-year period, we do not consider that the district is remediless in cases of misconduct of a superintendent amounting to a substantial breach of the express or

implied terms of his contract. At this point the present controversy moves over into the field of general contract law. If good cause for discharge exists and is proved in defense of any action brought by the superintendent, the district is exonerated from any further obligation. If, on the other hand, the proof shows prevention of performance by wrongful interference of the district board, the district becomes amenable to any appropriate form of redress. Division 7 of the code embraces the subject of School Employees and section 13005 says: "Nothing in this division shall be construed in such manner as to deprive any person of his rights and remedies in a court of competent jurisdiction on a question of law and fact."

One of the commonest applications of mandamus is restoration of a school teacher to a position from which he or she has been wrongfully ousted. (See 23 Cal.Jur. § 100, p. 137; 32 Cal.Jur.2d § 23, p. 168.) "Although teaching positions are acquired by *contract*, permanent status is guaranteed by *statute*, and the position is therefore a 'right' or 'office' within the meaning of Cal. Code Civ. Proc., § 1085." (24 Cal.L.Rev. p. 442(9).)

Respondents' argument that mandamus will not lie to compel mere performance of a contract cannot prevail here because it overlooks the fact that the instant application seeks restoration to a status created by statute as well as contract. Appellant was elected pursuant to section 1303 and the contract followed as an implementation of that election and the status thus conferred by law. The distinction is drawn in *Elevator Operators etc. Union* v. *Newman,* 30 Cal.2d 799, 808 [186 P.2d 1]: "His claim was based, not on breach of contract, but on the theory that he had a right to reinstatement to the office. It is settled that mandamus does not lie when there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract." It is well established that the writ is appropriate in those instances where restoration of a status growing out of statute as well as contract is the objective,—this for the reason that a money judgment is not an adequate remedy. In the case at bar appellant's election and contract assure him of permanent status as a schoolroom teacher if he successfully performs for three years, he having been elected already for a fourth year. A money judgment could not adequately compensate for the destruction of retirement and other rights and perquisites that grow out of permanent status.

That this is a proper case for mandamus follows from a consideration of the apposite authorities. Volume 34, American Jurisprudence, section 203, page 974: "Since mandamus does not generally lie to determine mere contract rights, the writ will not be awarded to compel reinstatement of a school-teacher who has been removed and whose relation to the school officers rests wholly in contract. But where the teacher by positive provision of law has a fixed tenure of office, or can be removed only in some prescribed manner, and where, consequently, the removal is not authorized, mandamus will issue, even though another teacher has been selected to fill the position. So, also, the remedy will lie to compel reinstatement of a teacher who has been removed in violation of statutory rights." The language just quoted fairly reflects California law. The leading cases are *Kennedy* v. *Board of Education*, 82 Cal. 483 [22 P. 1042]; *Saxton* v. *Board of Education*, 206 Cal. 758 [276 P. 998], and *Holbrook* v. *Board of Education, supra*, 37 Cal.2d 316.

In Kennedy the principal teacher of a certain grammar school sought mandate to restore her to that position after she had been transferred to a school of lower grade, carrying a reduced salary. It having been held that petitioner was wrongfully removed, the court passed upon the propriety of invoking mandamus. At page 491, it said: "The writ of *mandamus* may issue in this state 'to compel the admission of a party to the use and enjoyment of a *right* or *office* to which he is entitled, and from which he is unlawfully precluded.' (Code Civ. Proc., § 1085.)

"It may be conceded that a right to hold the position of teacher in the public schools would not be a 'right' within the meaning of this section, if such right depended solely upon a *contract* with the board of education, and the term for which such position should be held were not fixed by the statute. But such is not the case. As we have seen, the term for which the respondent was entitled to hold her position was not fixed by any contract with the appellant. The duration of her term of service is fixed by the *statute*, and her removal from it was not merely a violation of a contract, but of an *express provision of law forbidding such removal*. Although her right to take the position depended upon the act of the appellant, the right to continue in it was preserved to her by the statute, and to take it from her was to deprive her of a right given her by law, and to which she has a right

to be restored by *mandamus.* (*People* v. *Van Siclen,* 50 N.Y. Sup.Ct. 537.)

"The object being to restore her to a right given her by law, *mandamus* is the proper remedy." So at bar the term of service was fixed by an election under an applicable statute and does not depend solely upon the ensuing contract; appellant's removal from that employment was impliedly forbidden by the same law, as above held. Kennedy upholds the right to mandamus in the instant case.

*Saxton* v. *Board of Education, supra,* 206 Cal. 758, was a proceeding brought by a teacher who was classified as a permanent employee and sought mandamus to restore her to her position, from which she claimed wrongful expulsion. The writ was granted and the ruling affirmed. At page 766 the opinion says: "On the other hand, the courts of this state have frequently held that *mandamus* is the proper remedy to be invoked by a teacher, wrongfully dismissed from his position, and who holds it not under contract but by virtue of statutory authority. . . . The case of *Kennedy* v. *Board of Education, supra,* contains an apt and comprehensive statement of the law upon the subject, which we think is virtually conclusive of the present action." The court then quoted from the Kennedy opinion as we have done *supra.* At page 768, it further said: "The trial court having found that plaintiff had been wrongfully dismissed from her position, under the authority of *Kennedy* v. *Board of Education* and kindred cases, was authorized to compel by writ of *mandamus* her reinstatement to the position from which she had thus wrongfully been dismissed."

In *Holbrook* v. *Board of Education, supra,* 37 Cal.2d 316, the Supreme Court directed the issuance of mandamus (which had been denied below) to compel the Board of Education to restore petitioner to the position of a full time certificated employee. In considering the status of petitioner it was said, at page 331: "The relationship between respondent board and appellant is that of employer and employee and this relationship is created by contract. . . . The result of the tenure statutes 'was not to make the relation any the less one originating in contract, but to annex to contracts of employment when repeated for a sufficient time certain legal consequences.'" The ultimate holding is well summarized in syllabus 14, viz.: "Mandamus lies to compel a district school board to reinstate an employee to his prior position and to employ him as a full time employee in a position or positions

requiring certification qualifications of a proper grade, where he establishes that he had been employed in such position or positions requiring such qualifications for three consecutive years, and that he was reelected to such position or positions for the fourth year, and that he is entitled to a full time permanent position in the district.''

*Housing Authority* v. *City of Los Angeles, supra,* 38 Cal.2d 853, 870: ''[T]he court is not bound by precedent in determining what facts and circumstances compel the issuance of the writ but that the writ will issue as against a city or other public body or officer wherever law and justice require such action.''

We hold that mandamus lies in the instant case.

█ Respondents' counsel argued orally that, assuming the propriety of mandamus, appellant cannot succeed upon this appeal because he did not prove below that he had properly performed the contract up to the time of prevention of his further performance. The assertion that this burden rested upon him is not well founded. *Hooper* v. *Wickes,* 88 Cal.App. 535 [263 P. 853], is in point. It was an action for damages growing out of plaintiff's wrongful dismissal as principal of a certain high school district. He prevailed, although there was no evidence at the trial that he had properly performed, nor, on the contrary, was there any that defendants had any just cause to dismiss him. After quoting that portion of section 1609, Political Code, which is now section 13005, Education Code, the court said, in part: ''That is equivalent to saying that none of the provisions contained in section 1609 of the Political Code shall be so construed as to prevent a teacher from bringing an action for a violation of a contract held by him with a board of school trustees which necessitates the further holding, as would be the case in any ordinary action, that all that is necessary for a plaintiff to do is to prove the contract of employment, his readiness to perform and the breach by the opposite party. That is one of the rights included and referred to in subdivision 5 of said section 1609, because it is one of the rights given to a teacher just the same as to any other party to maintain an action for a violation of contract. The language of said subdivision of said section is also equivalent to saying that in such an action it is incumbent upon the party disavowing the contract to show that he is justified in such disavowal, as the rights guaranteed by said subdivision give to the teacher the same rights that

are vouchsafed to other parties occupying contractual relations.

"The form of the action does not appear to us to be at all decisive of the rights of the parties or as to proofs sustaining the action of either of the parties to the contract. That is to say, in any case a party breaching a contract must show good cause therefor. This is further illustrated in the case of *Goldsmith* v. *Board of Education,* 66 Cal.App. 157 [225 P. 783], where the subject matter of the dismissal of a school teacher was elaborately considered by this court in an opinion written by Mr. Justice Hart. A consideration of that opinion shows that . . . the action was one praying for a writ of mandate. . . . While in form an action for a writ of mandate, all the testimony bearing upon the truthfulness of the charges preferred against the teacher was placed before the trial court just as we hold it should have been done in this case. It is not incumbent upon the plaintiff to prove a negative. As we have stated, occupying a contractual relation, all he was called upon to do in the first instance was to introduce proof showing employment, the term of the employment, his readiness to perform, and the breach on the part of the defendants, or their refusal to permit performance, and the burden of showing justification or excuse for such refusal was then cast upon the defendants. In other words, it was their duty to introduce testimony showing the truth of the charges upon which they had acted." (Pp. 542-543.) To the same effect, see *Bowden* v. *Board of Education,* 264 Ill.App. 1, 11; *Compton* v. *School Directors of District No. 14,* 8 Ill.App.2d 243 [131 N.E.2d 544, 552]; *Seher* v. *Woodlawn School Dist. No. 26,* 79 N.D. 818 [59 N.W.2d 805, 811]; 78 C.J.S. § 212(b), p. 1119. Reference has been made herein to the trial judge's express declination to make any finding upon the subject of the quality of petitioner's performance, although he did find, "that at all times since the 6th day of January, 1956, except as hereinafter indicated, petitioner has held himself out as being ready, able and willing to perform his duties as Superintendent of said Lawndale School District, and has offered to perform the same, but at all times said Board of Trustees has refused to recognize the petitioner as the Superintendent of Lawndale School District;" the exception relates to appellant's acceptance of employment in New Mexico after his discharge.

The Hooper case, *supra,* 88 Cal.App. 535, merely applies general law pertaining to actions for breach of contract.

Section 1512, Civil Code, says: "If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties." Defendants' prevention of performance by petitioner relieved him from the necessity of proving that he had properly fulfilled his contract to that date. There being no evidence on the subject, any justification for dismissing him stands unproved and he is entitled to a reversal of the judgment.

The cases of *Holbrook* v. *Board of Education, supra,* 37 Cal. 2d 316, and *Board of Education* v. *Swan,* 41 Cal.2d 546 [261 P.2d 261], upon which respondents rely, are not opposed to the foregoing views. They deal with right of tenure. Neither Holbrook nor Swan was relying upon a statutory contract for a term in excess of one year. Each was advancing a claim to tenure appertaining to an administrative or supervisory position. Both cases hold that tenure does not accrue to such a position and is confined to permanence of employment as a classroom teacher. In fact, section 13089 so declares: "A person employed in an administrative or supervisory position requiring certification qualifications upon completing a probationary period, including any time served as a classroom teacher, in the same district, shall, in a district having an average daily attendance of 850 or more pupils, be classified as and become a permanent employee as a classroom teacher. . . ."

Holbrook, *supra,* sounded in mandamus. Petitioner, who had no contract other than that following an election for a yearly period, had devoted three-fourths of his time to administrative work and one-fourth to teaching. The school board classified him as a permanent one-fourth time director of adult education and three-fourths time as business manager noncertificated. The board later resolved to discontinue his services as business manager and to employ him for one-fourth time only to direct adult education. He then sought mandate to compel reinstatement to full time employment in the district. The Supreme Court held, at page 333: "Having been elected to a full-time position for three consecutive school years, some of the duties of which required certification qualifications, appellant is entitled to permanent full-time employment in the district if he was reelected for the fourth year in a position requiring certification qualifications." At 334: "While the present statute makes it clear that a principal or other supervisory employee need not perform any

teaching services in order to be entitled to tenure, there has been no change in the provision that such persons become permanent employees as classroom teachers after the probationary period is served. (See *Griffin* v. *Los Angeles City H. S. Dist.* (1942), 53 Cal.App.2d 350 [127 P.2d 939].) Accordingly, appellant is entitled to be classified as a permanent classroom teacher. This does not, of course, affect our conclusion that respondent board exceeded its authority in purporting to reduce appellant to part-time employment.'' The citation of the Griffin case shows that this language was intended to mean that tenure does not apply to administrative or supervisory functions, but that one who performs them, having the necessary certificate or certificates, earns in due course a right to tenure as a schoolroom teacher. Griffin specifically so holds with respect to a school principal. As above pointed out, Holbrook decides that mandamus is an appropriate remedy to preserve or restore tenure of an aggrieved certificated employee.

*Board of Education* v. *Swan, supra,* 41 Cal.2d 546, was not a mandamus case, nor was the applicability of that remedy considered or discussed. The action was brought by the Board of Education under section 13529 for a judgment permitting it to dismiss defendant and terminate her employment as a permanent teacher because of insubordination and other forms of misconduct. Defendant was qualified as teacher and principal. She refused to comply with an order of the board relieving her of the duties of principal and assigning her to teaching. Defendant relied, among other things, upon a right of tenure in the status of principal. She did not claim any statutorily authorized contract for more than one year and did not rely upon contract as distinguished from a right of tenure. Concerning this phase of the case the court said, at page 555: ''Defendant argues that after her years of service as a principal, she was not obliged to accept, without a hearing, teaching assignments from the superintendent of schools acting under plaintiff's order. But so far as defendant's demotion from the position of principal to teacher was concerned, plaintiff acted within its authority. Principals do not secure tenure in that capacity (Ed. Code, §§ 13088-13089), and the governing board may cancel their contracts as principals at any time, subject, of course, to a possible judgment for damages in an action at law in the event the board fails to justify the dismissal of the principal from such position. (*Griffin* v. *Los Angeles City High School*

*Dist.*, 53 Cal.App.2d 350, 351 [127 P.2d 939].) Having no tenure in her employment as a principal, defendant was indisputably guilty of insubordination in declining to accept the teaching assignment and was subject to dismissal." This language is to be read in the light of the issue under discussion, which was not that of remedy but one of alleged right. "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." (*Porter* v. *Bakersfield & Kern Elec. Ry. Co.*, 36 Cal.2d 582, 590 [225 P.2d 223].) "But it is a familiar rule that expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration, and that they cannot be safely applied in their largest and most universal sense to dissimilar cases." (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 250 [27 P. 604].) The Swan decision does distinctly hold that principals "do not secure tenure in that capacity," meaning permanence of status, and that defendant was guilty of insubordination rendering her subject to dismissal for declining to accept a teaching assignment. But the question of what other rights or remedies might exist or be available was not before the court. The statement that "the governing board may cancel their contracts as principals at any time, subject, of course, to a possible judgment for damages in an action at law in the event the board fails to justify the dismissal of the principal from such position," carries a plain recognition of the fact that a principal's services cannot be terminated without good cause and if that is attempted the employee is entitled to damages. Whether that would be the exclusive remedy was not being considered; specifically, whether mandamus would lie to effect reinstatement to permanent classroom status was not within the confines of the discussion. The quoted language cannot be fairly construed to mean that mandamus will not lie to restore the position of one who has a fixed status for four years created by statutory election and implementing contract. If it were so interpreted it would be dictum and opposed to the considered cases of Kennedy, Saxton and Holbrook, above discussed.

In view of our conclusion that petitioner is entitled to a reversal because of what appears from the record now before us to have been a wrongful dismissal, it becomes unnecessary to discuss appellant's claim that he is a public officer whose removal can be effected only pursuant to a grand jury accusation under section 3060, Government Code.

Upon a retrial the court should determine whether good cause existed for discharge of appellant from his position as superintendent of schools.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

Fox, P. J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied March 24, 1958, and respondents' petition for a hearing by the Supreme Court was denied April 23, 1958.

---

*Assigned by Chairman of Judicial Council.